**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MEDICOM TOY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>Defendants. | Civil Action No. 26-cv-2390 |

# COMPLAINT

MEDICOM TOY CORPORATION ("Plaintiff" or "MTC") by and through its undersigned counsel, hereby files this Complaint against the entities identified on Schedule A hereto (collectively, "Defendants"):

1. Plaintiff files this action to combat online infringers who trade upon Plaintiff's reputation and the goodwill associated with Plaintiff's valuable intellectual property by selling and/or offering for sale unauthorized, unlicensed, counterfeit, and infringing products that violate Plaintiff's federally registered trademark and copyright (the "Infringing Products"). Defendants have offered for sale, sold, and distributed the Infringing Products within this district and throughout the United States by operating e-commerce stores using their respective Store Names and Store IDs set forth on Schedule "A" hereto (collectively, the "Seller Aliases").

2. As set forth below, Defendants, without authorization, are using Plaintiff's federally registered trademark and copyright by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling Infringing Products bearing

unlicensed and infringing versions of Plaintiff's trademark and copyrighted work. Additionally, Defendants are also liable for contributory infringement as they knowingly induce, cause, or materially contribute to the infringing conduct of others by providing means and platforms for the sale and distribution of Infringing Products.

3. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's trademark and copyright; therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it has sustained and is sustaining. In support thereof, Plaintiff states as follows:

## NATURE OF THE ACTION

4. This action has been filed to combat online trademark and copyright infringers who trade upon Plaintiff's reputation, goodwill, and valuable intellectual property by selling and/or offering for sale Infringing Products bearing or using Plaintiff's federally registered trademark and copyright without authorization or authority to engage in such activities.

5. Plaintiff is in the business of creating, marketing, licensing, selling, and distributing BE@RBRICK products featuring its distinctive designs. BE@RBRICK is a collectible designer toy designed and produced by MTC. MTC collaborates with contemporary artists, brands, and celebrities to create their unique BE@RBRICK designs. These figures are unique and highly popular with collectors, as no two designs are exactly the same. MTC is the official source of BE@RBRICK products (hereinafter referred to as the "BE@RBRICK Products"):




https://bearbrick.com/product/

6. Plaintiff MTC is the owner of the several trademarks for its BE@RBRICK brand, including U.S. Trademark Registration No. 2,739,721 (the "BE@RBRICK Mark").

| Trademark | Registration Number | Goods and Services Covered |
|---|---|---|
| BE@RBRICK | 2,739,721 | IC 028: Dolls, fully assembled or in kit form, and parts and accessories therefore; doll clothes; Toys and Plastic toys, namely, building blocks and toy action figures |

7. A true and correct copy of the registration certificate for the BE@RBRICK Mark is attached as Exhibit 1.

8. In addition, MTC is the owner of Copyright Registration No. VA0002458290 (the "BE@RBRICK Work").

| Copyright Title | Copyright Registration | Copyrighted Work |
|---|---|---|
| BE@RBRICK sculpture. | VA0002458290 |  |

9. A true and correct copy of the registration certificate for the BE@RBRICK Work is attached as Exhibit 2.

10. In the ordinary course of its business, Plaintiff conducted an investigation and discovered that Defendants were marketing and selling Infringing Products that displayed

unauthorized reproductions of the BE@RBRICK Work and bore the unauthorized BE@RBRICK Mark, without any license or authorization from Plaintiff (the BE@RBRICK Work and BE@RBRICK Mark are collectively referred to herein as the "BE@RBRICK IP").

11. Upon information and belief, Defendants' infringing activities of offering for sale, marketing, and selling Infringing Products utilizing the BE@RBRICK IP arise from the same transaction, occurrence, or series of transactions or occurrences. Specifically, upon information and belief, Defendants are actively participating in a common scheme to distribute and sell Infringing Products to United States consumers. Further, Defendants, upon information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products. Moreover, the Infringing Products and their corresponding listings share similar characteristics, including similar products, product descriptions, pricing strategies, payment processors, shipping options and source materials, suggestive of common ownership or a coordinated scheme.

12. Plaintiff has been and continues to be irreparably harmed by Defendants' blatant and ongoing infringement and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for this sustained injury.

13. Plaintiff therefore brings this action for federal copyright and trademark infringement pursuant to 17 U.S.C. § 501(a), et seq., 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

**JURISDICTION AND VENUE**

14. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the claims in this action are brought under the Copyright Act, 17 U.S.C. § 101 *et seq*., and the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq.

**Personal Jurisdiction**

15. Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat. § 5322(a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit." Therefore, Pennsylvania authorizes personal jurisdiction over a defendant who commits even a single tortious act in the Commonwealth for the purpose of thereby realizing pecuniary benefit. 42 Pa. Cons. Stat. 5322(a).

16. Alternatively, Federal Rule of Civil Procedure 4(k)(2) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district.

17. Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through online platforms and storefronts, via online marketplace websites such as Amazon, Walmart, Temu and others (the "Third Party Platforms"), under the Seller Aliases, as well as any and all presently unknown accounts with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the United States, including Pennsylvania, can view the one or more of Defendants' online storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

18. Upon information and belief, Defendants are sophisticated sellers, operating one or more commercial businesses using their respective storefronts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them, hold or control in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

19. Upon information and belief, Defendants' online storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

20. Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

21. Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment of the Infringing Products.

22. Plaintiff also markets and offers for sale its genuine products to consumers in the U.S., including Pennsylvania, through authorized distributors and third parties via the Internet.

23. Upon information and belief, Defendants are deliberately employing and benefiting from coordinated paid advertising and marketing strategies in order to make their storefronts selling illegal goods appear more relevant and attractive to search result software across an array of queries. By and through their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of genuine Plaintiff's Products on various online marketplaces and/or diluting and driving down the retail market price; (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's works and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about this brand and products.

24. Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Pennsylvania.

25. Upon information and belief, many Defendants reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax or nonexistent intellectual property enforcement systems.

26. Upon information and belief, Defendants are aware of Plaintiff's Products and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

**Venue**

27. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), which authorizes a civil action to be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. As stated above, both Plaintiff and Defendants conduct substantial business in Pennsylvania, including within this district.

28. Here, Plaintiff's infringement investigation centered not only on the sale of products with substantially similar patterns to the BE@RBRICK IP, but also the state in which Defendants were selling the Infringing Products - Pennsylvania. Therefore, a substantial part of the events giving rise to Plaintiff's claims occurred within this forum. As discussed above and shown in Plaintiff's presented evidence attached as Exhibit 3, each of the Defendants offers for sale products infringing upon the BE@RBRICK IP to consumers in the forum. Select screenshots of Plaintiff's evidence demonstrate that Defendants were and are offering for sale and/or selling Infringing Products in this forum. This exemplary evidence is included in the table below:

[redacted]

[redacted]

29. Each Defendant's offer for sale within the forum is a substantial part of Plaintiff's claims and establishes a proper venue in this district. Further, Defendants are not prejudiced by Plaintiff's selection of venue, as they may have the right to file a motion, after receiving notice of the case, contesting venue and explaining why the case should be dismissed or transferred.

30. Venue in this district is further justified by 28 U.S.C. § 1391(b)(3) and 28 U.S.C. § 1391(c)(3). Section 1391(b)(3) states that "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is an appropriate venue. As discussed herein, Defendants are subject to personal jurisdiction before this Court arising from their tortious acts within the forum. Additionally, Defendants are foreign entities who do not reside in any other

United States judicial district, as provided for in Section 1391(b)(3); meaning that if the Court rejects Plaintiff's claims of substantiality, venue is not otherwise provided for under Section 1391(b) and is appropriate here as this Court has personal jurisdiction over Defendants. Similarly, Section 1391(c)(3) states that non-resident defendants may be sued in any judicial district.

31. Accordingly, venue is proper before this Court because a substantial part of events giving rise to Plaintiff's claims occurred in the district, or because Defendants do not reside in any State and are therefore statutorily subject to this Court's exercise of personal jurisdiction, and because Defendants are nonresidents of the United States.

32. For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. In short, each of the Defendants is committing tortious acts in Pennsylvania via offering for sale and/or sale of their infringing goods through their online marketplaces, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Pennsylvania.

## THE PARTIES

### Plaintiff MEDICOM TOY CORPORATION

33. Plaintiff MTC is a corporation formed and existing pursuant to the laws of Japan and has a place of business at 上原 3-22-5, Uehara, Tokyo, 151-0064, Japan. Plaintiff engages in the design, licensing, sales, marketing and distribution of BE@RBRICK goods featuring BE@RBRICK trademarks and BE@RBRICK copyrighted works worldwide.

34. Plaintiff's registrations for the BE@RBRICK Work and BE@RBRICK Mark are valid and enforceable.

35. The BE@RBRICK Mark is distinctive when applied to Plaintiff's Products, demonstrating to purchasers that authentic BE@RBRICK Products originate from Plaintiff and are manufactured to Plaintiff's quality standards.

36. Plaintiff's BE@RBRICK Mark has been continuously used and never abandoned.

37. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and promoting its BE@RBRICK Mark and Plaintiff's Products.

38. The presence of Plaintiff's BE@RBRICK IP increases the value of the Plaintiff's Products by increasing brand awareness and consumer confidence.

39. The BE@RBRICK IP is used by Plaintiff to, among other things, market and advertise Plaintiff's Products, representing significant commercial value in the marketplace with the potential to generate millions of dollars in revenue for Plaintiff.

40. Plaintiff possesses exclusive rights under the Copyright Act to reproduce, prepare derivative works based upon, distribute copies of, and publicly display the BE@RBRICK Work, as well as rights under the Lanham Act to protect its BE@RBRICK Mark against unauthorized use and infringement.

41. Plaintiff is widely advertising and promoting genuine goods utilizing the BE@RBRICK IP via the Internet. Third Party Platforms have become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff has been expending significant monetary resources on Internet marketing, including search engine optimization strategies. Those strategies allow Plaintiff to educate consumers fairly and legitimately about the value associated with genuine Plaintiff's Products. Similarly, Defendants' individual Seller Aliases are also indexed on the Third-Party Platforms and compete directly with Plaintiff for space in the search results, resulting in a flooding of the market with Infringing Products and irreparably harming Plaintiff and its business.

**The Defendants**

42. Defendants are individuals and business entities who reside in the People's Republic of China and other foreign jurisdictions, as identified on Schedule A. Defendants conduct business or assist in conducting business throughout the United States (including within the Commonwealth of Pennsylvania and this judicial district) through the manufacturing, online advertising and offering for sale, and importation and distribution of counterfeit and Infringing Products that bear Plaintiff's BE@RBRICK IP, by operating e-commerce stores using their respective Store Names and Store IDs set forth on Schedule A hereto (collectively, the "Seller Aliases").

43. Defendants appear to be an interrelated group of counterfeiters and infringers, who create numerous Seller Aliases and design these stores to appear to be selling genuine versions of Plaintiff's Products, when in fact they are actually selling inferior imitations of Plaintiff's Products.

44. The Seller Aliases share unique identifiers with common design elements, such as the same or related products offered for sale, identical product descriptions or product titles, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, identically or similarly priced Infringing Products and volume sales discounts.

45. These similar elements between Defendants' Seller Aliases establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same transaction or occurrence or series of transactions or occurrences.

46. Defendants attempt to evade detection and avoid and mitigate liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their stores multiple times, opening new

stores, assisting others with opening new stores, and making subtle changes to their products. Further, many of the Third-Party Platforms used by Defendants, including Amazon, Walmart, Temu and others, do not properly verify or confirm names or addresses used by operators of the stores, which allows counterfeiters to open as many stores as they can using any number of names.

47. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it difficult for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network.

48. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend this Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

49. Plaintiff's business success and the worldwide popularity of the BE@RBRICK brand have resulted in significant counterfeiting and other infringement of Plaintiff's federally protected BE@RBRICK IP. Consequently, Plaintiff maintains an anti-counterfeiting program and investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.

50. Plaintiff has identified many fully interactive e-commerce stores, including the Seller Aliases, offering for sale, and/or selling Infringing Products to consumers in this judicial district and throughout the United States on Third Party Platforms such as Amazon, Walmart, Temu and others.

51. Defendants operate at least the Seller Aliases identified in Schedule A and engage in counterfeit use of Plaintiff's BE@RBRICK IP, including offering for sale and selling Infringing Products which have caused and are continuing to cause irreparable harm to Plaintiff's business.

52. Defendants' sale, distribution, and advertising of Infringing Products are highly likely to cause consumers to believe mistakenly that Defendants are offering and selling authorized Plaintiff's Products when in fact they are not.

53. Screenshot evidence showing each Seller ID on Schedule A selling Infringing Products is attached as Exhibit 3. Exhibit 3 shows that the infringing marks and works used by Defendants have identical or near-identical spelling to Plaintiff's BE@RBRICK Mark and are identical or near-identical to Plaintiff's BE@RBRICK Work and illustrates the potential for consumer confusion between the genuine and counterfeit products.

54. In a 2024 report by the Office of the United States Trade Representative (USTR) titled 2024 Review of Notorious Markets for Counterfeiting and Piracy, counterfeit and pirated goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and 90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social media driven traffic. (*See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce).

55. E-commerce retail platforms such as those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, which allows infringers to regularly use false names and addresses when registering with these e-commerce retail platforms.

56. Upon information and belief, each Defendant operates more than one merchant storefront.

57. Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

## JOINDER OF DEFENDANTS

58. As stated above, upon information and belief, Defendants often operate under multiple fictitious aliases, and unauthorized on-line retailers such as the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other identifying information and likewise omit other seller aliases that they use.

59. Further, such unauthorized retailers include other notable common features on their internet stores such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, similarities in price and quantities, and/or the use of the same text and stock images or artificially produced images.

60. The Infringing Products offered for sale by unauthorized retailers such as the Seller Aliases often bear irregularities and indicia of being unauthorized that are similar to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

61. On information and belief, Defendants are in communication with each other and with other infringers. They participate in online forums and chat rooms, including but not limited to WeChat chat rooms and websites such as sellerdefense.cn and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and new lawsuits.

62. Upon information and belief, Defendants operate under multiple seller aliases and payment accounts so that they can continue operation despite enforcement efforts. Analysis of

financial account transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of the U.S. and this Court.

63. Further analysis of similar cases shows that defendants often sweep their accounts in case their infringing activities are detected, and their accounts are frozen, at which time defendants may settle for lesser amounts to regain access to the remaining funds or abandon their stores altogether and start fresh with a new alias.

64. Upon information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such offshore accounts based outside the jurisdiction of this Court.

65. Upon information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their infringement of intellectual property rights. Defendants bear the hallmarks of an interrelated group of infringers that create numerous Seller Aliases and design their respective and collective stores to appear to be selling genuine versions of Plaintiff's Products, while they are actually selling inferior, unauthorized imitations of Plaintiff's Products.

66. The Seller Aliases identified in Schedule A share unique identifiers, including: common design elements, the same or similar counterfeit and Infringing Products that they offer for sale, similar Infringing Product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced counterfeit and Infringing Products and volume sales discounts. The foregoing similarities establish a logical relationship between them

and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences.

67. These tactics used by Defendants to conceal their identities and the full scope of their infringing operations make it highly difficult for Plaintiff to learn the precise scope and the exact interworking of their illegal network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

**COUNT I**
**COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)**

68. Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

69. Plaintiff's BE@RBRICK Work constitutes a creative, original work of authorship, fixed in a tangible medium of expression, and is protectable under U.S. copyright law. See 17 U.S.C. § 102. The BE@RBRICK Work is the subject of a valid copyright registration, and Plaintiff is the holder of the pertinent exclusive rights therein, including the exclusive rights of reproduction and distribution.

70. Plaintiff is the holder of a valid and enforceable copyright in Plaintiff's BE@RBRICK Work.

71. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for Plaintiff's BE@RBRICK Work and has obtained a valid copyright registration for Plaintiff's BE@RBRICK Work. The copyright registration precedes the date of the alleged infringement which entitles Plaintiff to seek statutory damages and attorney's fees under 17 U.S.C. § 505.

72. Upon information and belief, Defendants had access to Plaintiff's BE@RBRICK Work via the internet and elsewhere, as evidenced by their sophisticated business operations and

the widespread nature of Plaintiff's BE@RBRICK Work, and had actual knowledge of Plaintiff's copyright before engaging in the infringing activities described herein.

73. Without authorization from Plaintiff, the original creator of the BE@RBRICK Work, or any right under the law, Defendants have, *inter alia*, willfully copied, reproduced, publicly displayed, and distributed Infringing Products incorporating Plaintiff's BE@RBRICK Work, in connection with their operation of the Defendant Internet-based stores.

74. Defendants' Infringing Products incorporate works that are virtually identical to and/or are indistinguishably similar to Plaintiff's BE@RBRICK Work.

75. Defendants have, therefore, individually, as well as jointly and severally, infringed and continue to infringe Plaintiff's copyright in Plaintiff's BE@RBRICK Work in violation of 17 U.S.C. § 501(a). *See also* 17 U.S.C. §§ 106(1), (3), (5).

76. Defendants had knowledge of the infringing activity and materially contributed to it by providing the means for others to infringe Plaintiff's copyright through their distribution and sale of Infringing Products. Moreover, Defendants' actions have enabled and facilitated direct infringement by third parties who purchase and use the Infringing Products. By providing the means and platform for this direct infringement, Defendants are secondarily and vicariously liable for contributory infringement, Their actions are inextricably linked to the underlying acts of direct infringement committed by the end-users of the Infringing Products.

77. Defendants reap the benefits of their unauthorized reproduction, public display, and distribution of Plaintiff's BE@RBRICK Work through their receipt of substantial revenue, including substantial profit, driven by high volume sales of their Infringing Products.

78. Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Infringing Products that use Plaintiff's BE@RBRICK Work without its permission.

79. Defendants' infringement has been knowing, willful, intentional, and purposeful, and has been undertaken repeatedly in blatant disregard of Plaintiff's rights. On information and belief, Defendants had actual or constructive knowledge of Plaintiff's BE@RBRICK Work given its widespread nature and Defendants' sophisticated business operations in the relevant market.

80. Defendants, by their actions, have caused and continue to cause financial injury to Plaintiff in an amount to be determined at trial, including but not limited to lost profits, diminution in the value of Plaintiff's intellectual property, and costs associated with remedying the infringement.

81. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff irreparable injury that cannot fully be compensated for or measured monetarily. Plaintiff has no adequate remedy at law for such injury.

82. Considering the foregoing, and as contemplated by 17 U.S.C. § 503(b), Plaintiff seeks injunctive relief prohibiting further infringement of Plaintiff's BE@RBRICK Work by Defendants.

## COUNT II
## INFRINGEMENT OF A REGISTERED TRADEMARK IN VIOLATION OF 15 U.S.C. § 1114

83. Plaintiff re-alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs.

84. Plaintiff is the owner of the BE@RBRICK Mark with standing to bring this action. The United States registration for the BE@RBRICK Mark is valid, subsisting, and in full force and effect.

85. Upon information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's BE@RBRICK Mark and are willfully infringing and intentionally using counterfeits of Plaintiff's BE@RBRICK Mark.

86. Defendants' willful, intentional and unauthorized use of Plaintiff's BE@RBRICK Mark is likely to cause and is causing confusion, mistake, and deception among the general public as to the origin and quality of the Infringing Products.

87. Defendants are using marks or symbols in commerce that are likely to cause confusion, or to cause mistake, or to deceive as to the source, origin, sponsorship, or approval of Defendants' goods. This conduct is likely to cause purchasers and potential purchasers to believe falsely that Defendants' goods are sponsored by, approved by, or affiliated with Plaintiff.

88. Defendants are using in commerce marks or symbols that are identical to, substantially indistinguishable from, colorable imitations of, or confusingly similar to Plaintiff's BE@RBRICK Mark, and the unauthorized use of Plaintiff's BE@RBRICK Mark by Defendants in commerce is likely to cause damage and other irreparable injury to Plaintiff unless such use is enjoined by this Court, Plaintiff having no adequate remedy at law.

89. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are currently still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of Plaintiff's BE@RBRICK Mark without Plaintiff's permission.

90. Defendants' use of marks in commerce that are identical to, substantially indistinguishable from, colorable imitations of, or confusingly similar to Plaintiff's BE@RBRICK

Mark constitutes willful trademark infringement of Plaintiff's rights in and to its federally registered trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

91. After a reasonable opportunity for further investigation and discovery, it is likely the evidence will show that Defendants' aforesaid acts have been and are being committed with knowledge of Plaintiff's BE@RBRICK Mark, and that such acts are likely to cause confusion, or to cause mistake, or to deceive. Defendants' acts are therefore intentional, willful, and are maliciously calculated to cause confusion, to cause mistake, or to deceive. As such, this is an exceptional case.

92. In accordance with 15 U.S.C. § 1117(a), Plaintiff is entitled to recover from Defendants: (1) Defendants' profits, (2) any damages sustained by Plaintiff, and (3) the costs of this action. Further, because Defendants' violation of Plaintiff's trademark rights constitutes willful infringement and/or use of counterfeit marks, Plaintiff is entitled to reasonable attorneys' fees under 15 U.S.C. § 1117(a).

93. Plaintiff is further entitled to an award of three times its damages or Defendants' profits for those Defendants found to be intentionally using a counterfeit mark, pursuant to 15 U.S.C. § 1117(b).

94. Alternatively, pursuant to 15 U.S.C. 1117(c), Plaintiff may elect at any time before final judgment is entered to recover, instead of actual damages and profits, an award of statutory damages of not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just. If the Court finds that the use of the counterfeit mark was willful, the Court may award up to $2,000,000 per counterfeit mark per type of goods or services.

95. Plaintiff has no adequate remedy at law and has been irreparably damaged by Defendants' use of counterfeit and/or infringing marks in the United States and will continue to be irreparably damaged unless such use is immediately and permanently enjoined by this Court. Furthermore, Plaintiff will demonstrate a likelihood of success on the merits of its claims through evidence of Defendants' infringement of Plaintiff's BE@RBRICK Mark.

**COUNT III**
**FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a)**

96. Plaintiff re-alleges and incorporates by reference herein the allegations set forth in the preceding paragraphs.

97. Defendants' promotion, marketing, offering for sale, and sale of Infringing Products have created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiff.

98. By using Plaintiff's BE@RBRICK Mark in connection with the Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the source, origin, and sponsorship of the Infringing Products.

99. Upon information and belief, Defendants' false designation of origin and misrepresentation of fact as to the source, origin, and/or sponsorship of the Infringing Products to the general public involves the knowing and intentional use of counterfeit marks and constitutes a willful violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

100. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill associated with the BE@RBRICK Mark.

101. Defendants' continued infringement causes substantial and irreparable harm to Plaintiff's business and brand reputation, including ongoing economic harm and reputational damage. Cessation of the infringing activities would not impose undue hardship on Defendants, as it merely requires them to stop selling Infringing Products. The public interest favors injunctive relief to protect consumers from confusion and deception and to maintain the integrity of the marketplace.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(1) That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons who receive actual notice of this Court’s Order and are acting for, with, by, through, under, or in active concert or participation with them, be permanently enjoined and restrained from the following actions:

(a) using Plaintiff’s BE@RBRICK Mark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiff Product or is not authorized by Plaintiff to be sold in connection with Plaintiff’s BE@RBRICK Mark;

(b) passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff’s Product or any other product produced by Plaintiff, which is not Plaintiff’s or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff’s BE@RBRICK Mark;

(c) committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff; and

(d) manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's BE@RBRICK Mark or any reproductions, counterfeit copies, or colorable imitations thereof.

(e) reproducing, distributing, publicly displaying, or preparing derivative works based upon the BE@RBRICK Work;

(f) making, using, offering to sell, selling, or importing any products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the BE@RBRICK Work;

(g) effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

(h) aiding, abetting, contributing to, or otherwise assisting anyone in infringing Plaintiff's exclusive copyright in Plaintiff's BE@RBRICK Work or Plaintiff's exclusive rights in and to the BE@RBRICK Mark.

(2) Directing that Defendants deliver for destruction all Infringing Products and any other products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of Plaintiff's BE@RBRICK Work and/or Plaintiff's BE@RBRICK Mark.

(3) Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, online marketplaces, and other third parties who are in active concert or participation with Defendants and who have received actual notice of this Court's Order pursuant to Fed. R. Civ. P. 65(d)(2) shall, within two (2) business days of receipt of such notice:

(a) locate all accounts and assets held in the name of, or for the benefit of, Defendants, including but not limited to merchant accounts and payment processor accounts;

(b) restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c) upon entry of a final judgment awarding monetary relief to Plaintiff, transfer to Plaintiff all funds restrained in such accounts up to the amount of such monetary relief within ten (10) business days of receipt of written notice of such final judgment from Plaintiff's counsel.

(4) Entering an Order that, after entry of a final judgment and until Plaintiff has recovered full payment of monies owed to it by Defendants pursuant to such judgment, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff may petition this Court for authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and online marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

(a) locate all accounts connected to Defendants;

(b) restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c) transfer any funds restrained in such accounts to Plaintiff, up to the remaining unpaid amount of the final judgment, within ten (10) business days of receipt of a court order authorizing such transfer.

(5) Awarding Plaintiff statutory damages based on Defendants' willful trademark counterfeiting, pursuant to 15 U.S.C. § 1117(c), in an amount up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, per Defendant, as the Court deems just and proper;

(6) Awarding Plaintiff statutory damages based on Defendants' willful copyright infringement, pursuant to 17 U.S.C. § 504(c)(2), in an amount up to $150,000 per infringed work, per Defendant, or such other amount as the Court deems just and proper;

(7) Alternatively, should the Court not award Plaintiff statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's BE@RBRICK IP as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(8) Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(9) Awarding Plaintiff any and all other relief that this Court deems just and proper.

Date: November 5, 2026

Respectfully submitted,

*/s/ Keaton Smith*
Keaton Smith IL #6347736
Shengmao (Sam) Mu NY #5707021
Abby Neu IL #6327370
Ryan E. Carreon DE #7305
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: 872-294-3799
Email: ksmith@whitewoodlaw.com

*Counsel for Plaintiff*